IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DREW KRANTZ, | No. 4:21-CV-01217 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SCOTT STIELER and MARKET STREET INVESTMENT CORPORATION, INC., | |
| Defendants. | |

MEMORANDUM OPINION

MAY 4, 2023

Plaintiff Drew Krantz sues Defendants Scott Stieler and Market Street Investments Corporation, Inc. ("Market Street") for their negligence in maintaining a property at 220 South Seventh Street, Lewisburg, Pennsylvania (the "Premises"). Krantz, a Bucknell University student, was injured at the Premises while visiting one of its tenants, another Bucknell student. Krantz was installing an air conditioning unit in a window when the windowpane broke, causing glass to fall on his wrist, seriously injuring him. Defendants move for summary judgment in their favor, arguing that they did not owe Krantz a duty of care. For the following reasons, the Court grants their motion in part and denies it in part.

I.   BACKGROUND

   A.   **Underlying Facts**[1]

On May 24, 2021, Krantz and others visited Adrien Crastes, who was then a tenant of the Premises.[2] All of those who were present that evening were students at Bucknell University.[3] The group decided to install a window air conditioning unit in Crastes' window.[4] When Krantz tried to open the window, the windowpane broke and fell on his wrist, severely injuring him.[5]

At the time, Market Street owned the Premises and rented it out to students of Bucknell University pursuant to a "Standard Form Lease Agreement" (the "Lease").[6] However, the Lease does not mention Market Street. It identifies Stieler as "Landlord."[7] It also later identifies Stieler as the "Landlord's Agent."[8] Under the Lease's terms, the tenants are responsible for informing the Landlord of any necessary repairs but prohibited from "hir[ing] outside contractors without [the] Landlord['s] approval."[9] The Landlord is responsible for "keep[ing] all the structural parts of the Property in working order, including . . . [the] [w]indows."[10]

---

1   The following facts are undisputed unless otherwise noted.
2   Defs.' Statement of Undisputed Material Facts ("SUMF"), Doc. 39 ¶ 2; Krantz Response to Statement of Undisputed Material Facts ("RSUMF"), Doc. 41 ¶ 2.
3   *See* Defs.' SUMF, Doc 39 ¶ 4; Krantz RSUMF, Doc. 41 ¶ 4.
4   Defs.' SUMF, Doc 39 ¶ 5; Krantz RSUMF, Doc. 41 ¶ 5.
5   Defs.' SUMF, Doc 39 ¶¶ 6-7; Krantz RSUMF, Doc. 41 ¶¶ 6-7.
6   Defs.' SUMF, Doc 39 ¶¶ 8, 11; Krantz RSUMF, Doc. 41 ¶¶ 8, 11; Lease, Doc. 39-6.
7   Lease, Doc. 39-6 at 1.
8   *Id.* at 6 (§ 25).
9   *Id.* at 4 (§ 10).
10  *Id.* (§ 11).

The Central Keystone Council of Local Governments ("Central Keystone") performed an annual inspection of the Premises on August 13, 2020.[11] The parties dispute whether Central Keystone inspects windows, but its report did not identify any defects with the Premises' windows following its August 13, 2020 inspection.[12] Central Keystone again inspected the Premises on August 21, 2020 "and found it to be in compliance with the current Property Maintenance Code and Bucknell University's Supplemental Standards for student occupied housing."[13]

### B. Procedural History

Krantz's First Amended Complaint alleges one count of negligence against both Defendants, seeking compensatory damages.[14] Defendants jointly move for summary judgment in their favor on Krantz's negligence claim.[15] Their motion has been fully briefed and is ripe for disposition.

## II. LAW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As the Supreme Court of the United States expressed in *Celotex Corp. v. Catrett*, summary judgment is required where a party "fails to make a showing sufficient to establish

---

[11] Defs.' SUMF, Doc 39 ¶¶ 16-17; Krantz RSUMF, Doc. 41 ¶¶ 16-17.
[12] *See* Aug. 17, 2020 Central Keystone Inspection Report, Doc. 39-8.
[13] Defs.' SUMF, Doc 39 ¶ 19; Krantz RSUMF, Doc. 41 ¶ 19.
[14] FAC, Doc. 11 ¶¶ 25-29.
[15] MSJ, Doc. 37.

the existence of an element essential to that party's case" on an issue that the "party will bear the burden of proof at trial."[16]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[17] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[18] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[19]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[20] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[21] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere

---

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[17] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[18] *Clark*, 9 F.3d at 326.
[19] *Id*.
[20] *Celotex Corp.*, 477 U.S. at 323.
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

suspicions."[22] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[23]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[24] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[25] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[26] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[27]

## III. ANALYSIS

Defendants argue that they owe Kranz no duty of care. To recover on a theory of negligence, a plaintiff must demonstrate that the defendant owes them a duty of care.[28] Whether a duty of care exists is a question of law.[29] First, Stieler argues he owes no duty to Krantz because he does not own the Premises—Market Street

---

[22] *Betts v. New Castle Youth Dev. Ctr*, 621 F.3d 249, 252 (3d Cir. 2010).
[23] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).
[24] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
[25] *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[26] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[27] Fed. R. Civ. P. 56(c)(3).
[28] *Jones v. Levin*, 940 A.2d 451, 454 (Pa. Super. Ct. 2007).
[29] *Thierfelder v. Wolfert*, 52 A.3d 1251, 1264 (Pa. 2012).

does.[30] Second, Defendants both argue that they owe no duty to Krantz as out-of-possession landlords.[31]

### A.     Whether Stieler Individually Owed Krantz a Duty

"As a general rule, a landlord out of possession is not liable for injuries incurred by third parties on the leased premises because the landlord has no duty to such persons."[32] But that rule is subject to exceptions—relevant here is the "reserved control" exception.[33] It provides that when a "landlord retains control of a part of the leased premises" that is "necessary to the safe use" of the leased premises," they are "liable to the lessee and others lawfully on the premises for physical harm caused by a dangerous condition existing upon that part over which they retain[] control," if they "could have discovered the condition and the risk involved[] and made the condition safe" through the "exercise of reasonable care."[34]

It is undisputed that Market Street—not Stieler—owned the Premises when Krantz was injured.[35] Krantz argues that even though Stieler does not actually own the Premises, he individually owes him a duty of care because he signed as and identified himself as the "Landlord" in the Lease.[36] Krantz points out that the case

---

[30] MSJ Br., Doc. 38 at 4-6.
[31] *Id.* at 6-13.
[32] *Jones*, 940 A.2d at 454.
[33] *Id.*
[34] *Id.* (quoting *Smith v. M.P.W. Realty Company, Inc.*, 225 A.2d 227, 229 (Pa. 1967)).
[35] Defs.' SUMF, Doc 39 ¶ 8; Krantz RSUMF, Doc. 41 ¶ 8. Krantz denies as stated Stieler's submission that Stieler "did not own the Premises." Defs.' SUMF, Doc 39 ¶ 9. He responds that Stieler "was the landlord of the property," citing to the Lease. Krantz RSUMF, Doc. 41 ¶ 9 (citing Lease, Doc. 39-6).
[36] Opp. Br., Doc 40 at 6-7.

law identifies "landlords" as the relevant parties that owe duties of care under the reserved-control exception, not landowners. That is true even in the first Pennsylvania case to discuss the concept of an out-of-possession landlord: *Hayden v. Second National Bank*.[37] But to agree with Krantz's argument would be to elevate form over substance. The term "Landlord," as used in cases of *Hayden*'s vintage and older, refers to the owner of the property who conveys their property interest through a lease agreement, not to the individual identified as "Landlord" in the lease document.[38] Stieler was acting as Market Street's agent when he signed the Lease.

Krantz argues that the tenants "believed that they were contracting with Stieler as their landlord since there is no mention of Market Street in the Lease."[39] But Krantz's claims are common-law torts, not claims that Stieler breached the Lease. Although the Lease may be relevant to the question of whether Market Street reserved control over any portion of the Premises, it is not the source for the duty of care necessary to sustain Krantz's negligence claim. That source is the common law, which only assigns the duty to the party who holds and conveys the relevant property

---

[37] *See* 199 A. 218, 219 (Pa. 1938), *overruled on other grounds by Reitmeyer v. Sprecher*, 243 A.2d 395 (Pa. 1968).
[38] *See Stokely v. Boner*, 10 Serg. & Rawle 254, 255-56, at *3 (Pa. 1823) (using the terms interchangeably); *Bank of Pennsylvania v. Wise*, 3 Watts, at *3 (Pa. 1834) (same); BLACK'S LAW DICTIONARY 1021 (4th ed. 1951) (defining "landlord" as "[h]e who, *being the owner of an estate in land*, has leased it for a term of years, on a rent reserved, to another person, called the 'tenant.'").
[39] Opp. Br., Doc. 40 at 7.

interest. Here, that party must be Market Street, because it is undisputed that Stieler does not have an individual property interest in the Premises.

### B. Whether the Court Should Pierce the Corporate Veil

Krantz next asks the Court to pierce the corporate veil between Stieler and Market Street as a basis of holding Stieler personally liable.[40] Under the law of Pennsylvania, a court may disregard a corporate form "whenever justice or public policy demand, such as when the corporate form has been used to defeat public convenience, justify wrong, protect fraud, or defend crime."[41] But "[t]here is a strong presumption in Pennsylvania against piercing the corporate veil."[42] Courts "must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception."[43] Factors relevant to considering piercing the veil include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetrate a fraud."[44]

Krantz argues that the record demonstrates that Stieler failed to adhere to corporate formalities, intermingled his personal affairs with Market Street's

---

[40] *Id.* at 9-12.
[41] *Mortimer v. McCool*, 255 A.3d 261, 268 (Pa. 2021) (quoting *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034-35 (Pa. 2018)).
[42] *Id.* (quoting *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995)).
[43] *Id.* (quoting *Wedner v. Unemployment Bd. of Review*, 296 A.2d 792, 794 (Pa. 1972)).
[44] *Id.* (quoting *Lumax*, 669 A.2d at 895).

8

corporate affairs, and is using Market Street's corporate form to escape liability "thus effectuating the perpetration of a fraud."[45] The Court respectfully disagrees.

Krantz identifies Stieler's failure to keep detailed invoices of the maintenance work he ordered for the Premises as a failure to adhere to corporate formalities. But as Defendants argue, the failure to adhere to corporate formalities involves omissions such as failing to hold board and/or shareholder meetings and keep corporate minutes.[46] Put differently, Stieler's failure to keep adequate maintenance records is not tantamount to a failure to keep adequate corporate records. There is no evidence of such a failure in the record.

Krantz next relies on Stieler's sole ownership of Market Street, his receipt of rental payments, and the Lease's identification of him as the "Landlord" in the Lease to argue that he intermingled his assets with Market Street. But that evidence merely shows that Stieler received rental payments, not that he deposited them into his personal account. And Krantz's identification as "Landlord" is consistent with his status as Market Street's agent. Nothing about his sole ownership or control of Market Street suggests that he disregarded the corporate form when acting on behalf of Market Street.

Krantz's last argument is equally unavailing. He argues that Defendants "are trying to create a loophole in which they avoid all liability for a dangerous condition

---

[45] Opp. Br., Doc. 40 at 11.
[46] *See In Re Nahas*, 161 B.R. 927, 933 (Bankr. W.D. Pa. 1993).

which they reserved control over."[47] He further argues that Defendants' "attempt at shielding [themselves] and evading all liability constitutes the perpetration of a fraud."[48] The Court disagrees. Defendants are not "creating a loophole" by availing themselves of the limited liability commonly associated with the corporate form. That is why veil-piercing is restricted to situations where the corporate form is used to defraud others. Krantz fails to explain how any of Defendants' actions could constitute fraud. The Lease may misrepresent Stieler's exact status, but there is no evidence to suggest that Krantz or the tenants relied on the fact that Stieler was a noncorporate owner of the property. Nor does refusing to pierce the veil leave Krantz with an unworkable remedy. There is also no evidence that Stieler purposely undercapitalized Market Street to escape financial liability. The Court therefore declines Krantz's invitation to pierce the corporate veil.

Accordingly, the Court concludes that Stieler did not owe Krantz a duty of care and grants that aspect of Defendants' motion.

### C. The Reserved-Control Exception

The Court now considers the application of the reserved-control exception to these facts. As noted above, that exception applies when a "landlord retains control of a part of the leased premises" that is "necessary to the safe use" of the leased premises they are "liable to the lessee and others lawfully on the premises for

---

[47] Opp. Br., Doc. 40 at 11.
[48] *Id.*

10

physical harm caused by a dangerous condition existing upon that part over which he retains control," if they "could have discovered the condition and the risk involved[] and made the condition safe" through the "exercise of reasonable care."[49]

Defendants argue that the exception does not apply when a landlord has made repairs in the past or generally retains the right to enter the property and make repairs, citing *Henze v. Texaco, Inc.*[50] In *Henze*, the Superior Court of Pennsylvania held that landlord did not reserve control of the leased premises by reserving the right to enter the property to make repairs or by "occasionally" making repairs to the leased premises.[51]

In *Jones v. Levin*, the Superior Court of Pennsylvania considered the exception's application to a lease that assigned to the tenant the responsibility of "all repairs to the [leased] premises" but restricted the tenant from making "structural repairs or alterations without the [landlord]'s consent."[52] In light of that provision, the *Jones* court concluded that there was a genuine issue of material fact "as to whether the [landlord] continued to exercise control over defective portions of the property in question."[53]

Accordingly, whether a landlord sufficiently reserves control over any portion of the leased premises depends on the nature of the landlord's contractual obligations

---

[49] *Jones*, 940 A.2d at 454 (quoting *Smith*, 225 A.2d at 229).
[50] MSJ Br., Doc. 38 (citing 508 A.2d 1200, 1202-03 (Pa. Super. Ct. 1986)).
[51] 508 A.2d at 1202-03 (citing AM. JUR. 2D LANDLORD AND TENANT § 775 (1970)).
[52] 940 A.2d at 456.
[53] *Id.*

11

as to that portion.[54] Under *Henze*, retaining the right to enter and repair a portion of the leased premises is insufficient to reserve control over it, as is occasionally repairing portions of the premises. But under *Jones*, affirmatively taking on the responsibility to repair a portion of the leased premises can be sufficient to reserve control over that portion.

Here, the Lease includes provisions similar to those found sufficient in *Jones*. It requires the tenants to inform "the Landlord immediately of any repairs needed" and forbids them from "hir[ing] outside contractors without [the] Landlord['s] approval."[55] It also provides that the "Landlord will keep all the structural parts of the [Premises] in working order, including [the] . . . [w]indows."[56] The Court finds those provisions sufficient to create an issue of fact as to whether Market Street reserved control over the windows at the Premises. Summary judgment is accordingly not appropriate here.

---

[54] *See id.* at 455 ("[The Pennsylvania] Supreme Court has long held that '[t]he relation of landlord and tenant is always created by contract, either express or implied. It cannot exist without such contract[.]'" (quoting *In re Wilson's Estate*, 649, 37 A.2d 709, 710 (Pa. 1944))).
[55] Lease, Doc. 39-6 at 4 (§ 10).
[56] *Id.* (§ 11).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
